565 P.2d 576

STATE of Idaho, Plaintiff-Respondent,

v.

Bruce CROOK, Defendant-Appellant.

No. 12180.

Supreme Court of Idaho.

June 16, 1977.

James C. Herndon, Herndon & Slavin, Salmon, for defendant-appellant.

Wayne L. Kidwell, Atty. Gen., Gordon S. Nielson, Sr. Deputy Atty. Gen., Boise, for plaintiff-respondent.

DONALDSON, Justice.

The central issue presented by this appeal from a conviction of first degree burglary is whether certain exhibits should have been excluded from evidence because of a gap in their chain of custody. Defendant-appellant Bruce Crook was convicted of the first degree burglary of the Salmon River Coffee Shop in Salmon, Idaho. At trial, the primary evidence against him was the testimony of Roger Hartley, who pleaded guilty to receiving the proceeds from the burglary, and the testimony of William Marshall, a criminologist at the State Forensic Laboratory. Marshall testified that in his opinion a piece of tape taken from a pair of pliers found at the scene of the burglary was torn from a roll of masking tape found in appellant's house. Appellant contends that a gap in the chain of custody of the masking tape and of the tape-covered pliers renders these exhibits, and Marshall's testimony, inadmissible as evidence. We disagree.

As a general rule in criminal proceedings, an exhibit must be shown to be in substantially the same condition when offered into evidence as it was when the crime was committed. However, the party offering the exhibit need not exclude all possibility of tampering. Where the court is satisfied that in all reasonable probability the article has not been changed in any material respect, the article is admissible into evidence. *State v. Griffith*, 94 Idaho 76, 481 P.2d 34 (1971). Ordinarily, the party offering an exhibit establishes its chain of custody in order to create a presumption that it was not materially altered. If the chain of custody has been broken, however, the party can still rely upon other evidence to show a lack of material alteration.

■ In the present case there is a gap in the chain of custody caused by the state's careless handling of the exhibits. Between the time Officer Nielson mailed the sealed box of exhibits to the State Forensic Laboratory and the time Marshall removed the box from the Laboratory evidence room, the box was opened and the tape was removed from the pliers. Apparently, the tape was removed when the pliers and the tape covering them were tested for fingerprints at the Department of Law Enforcement. The record does not indicate whether the entire box of exhibits or only the pliers were taken to the Department of Law Enforcement. Incredibly, the record also does not disclose the date the exhibits were taken from the Forensic Laboratory, who took them, whether tests in addition to fingerprinting were performed, who performed the fingerprint examination, who opened the box of exhibits, the date the exhibits were returned, or who returned them. Furthermore, the box was not re-sealed after the exhibits were returned to it. We do not believe, however, that the above-described gap renders the exhibits inadmissible into evidence. After considering other evidence presented by the state, we conclude that the state has adequately shown that the roll of masking tape and the tape-covered pliers were not changed in any material respect.

As Officer Nielson was leaving appellant's house with the masking tape, he noticed that there were red fibers on that part of the tape which was unrolled. He later placed on the roll a piece of tape which served as an evidence tag. He then packaged the masking tape and other exhibits, and mailed them to the State Forensic Laboratory.

When Marshall received the box of exhibits, the masking tape was still wrapped in white paper which was taped shut. During his examination of the tape, Marshall discovered red cotton fibers on the tape end. He testified that the fibers were foreign to the tape and were only on that part of the tape which had been pulled off the roll. Marshall also found similar red cotton fibers on the matching tape end from the pliers.

At trial, Officer Nielson examined the roll of masking tape, identified the attached evidence tag as being the one he placed on the roll prior to packaging it, and stated that the quantity of tape on the roll appeared to be the same as when he seized it. From the above circumstances, the trial court could reasonably conclude that the roll of masking tape had not been materially altered.

■ As for the tape-covered pliers, the record shows that they were altered. The tape was removed from the pliers, and both the tape and the pliers were covered with a graphite powder of the type used for fingerprint work. The only *material* alteration, however, would be if the tape end was torn to match the tape end from the masking tape. Although we could speculate that someone may have torn the tape on the pliers so that the tape end matched the torn tape end from the masking tape, there is nothing in the record to support such speculation. Accordingly, we hold that the trial court did not abuse its discretion in admitting into evidence the tape-covered pliers and the masking tape.

Marshall testified as an expert that in his opinion at least one of the pieces of tape on the pliers was torn from the roll of masking tape which was taken from appellant's residence. His opinion was based solely upon his conclusion that the tape ends matched after he examined them under a microscope. Appellant contends that the jury could have compared the tape ends and determined for themselves whether they matched. It was therefore error to permit expert testimony on that issue.

■ The admissibility and competency of opinion testimony, either expert or non-expert, is largely discretionary with the trial court. *State v. Johnson*, 96 Idaho 727, 536 P.2d 295 (1975); *State v. Cutler*, 94 Idaho 295, 486 P.2d 1008 (1971). Marshall testified that without a microscope it was difficult to determine accurately whether the tape ends fit together. We find no abuse of discretion in permitting him to

state his opinion that one piece of tape on the pliers came from the roll of masking tape.

■ Next, appellant contends that the trial court erred by refusing to grant his motion to strike from evidence the roll of masking tape and the testimony relating to it. The basis for the motion to strike was that the tape was seized in violation of appellant's Fourth Amendment rights. The motion to strike came during the third day of trial. Since it is unclear from the record whether the motion was denied because it was untimely, I.C.R. 12(b)(3); *State v. Gerhardt*, 97 Idaho 603, 549 P.2d 262 (1976), or because it lacked merit, we will consider the motion on its merits.

The roll of masking tape was "seized" in the following manner. After placing appellant under arrest, Officer Nielson told him that they wanted as evidence the shoes appellant was then wearing. Appellant agreed to return to his house with the officer in order to get another pair. After changing his shoes, appellant asked if he could get some other items of clothing. Officer Nielson answered that he could, but that he would watch appellant while he did so. As appellant was taking some clothes out of a portable, cardboard closet, Officer Nielson saw the roll of masking tape sitting on top of the closet. He asked appellant if he could take it, to which appellant answered, "Yes."

The seizure of the tape under these circumstances did not violate appellant's Fourth Amendment rights. Officer Nielson was present in appellant's home with appellant's consent. He knew that a pair of pliers covered with masking tape had been found at the burglarized cafe. Upon seeing the tape, Officer Nielson could reasonably conclude that it was evidence of the crime. His seizure of the tape was therefore constitutional under the plain view doctrine, irrespective of whether appellant freely consented to its taking. *State v. Pontier*, 95 Idaho 707, 518 P.2d 969 (1974); *Guidi v. Superior Court*, 10 Cal.3d 1, 513 P.2d 908, 109 Cal.Rptr. 684 (1973).

Appellant also alleges that the trial court erred in granting leave after the trial began to endorse the name of Joe White on the information. The burglary occurred sometime after White, the night janitor, left the cafe. At the preliminary hearing, White's employer testified that White had told him that he left the cafe between midnight and 12:30 a. m. At trial, White testified that he left the cafe between 1:00 a. m. and 1:30 a. m., but probably closer to 1:00 a. m. Appellant contended during the trial that the burglary was committed by one Roger Hartley. Since Hartley could account for his activities from approximately 1:00 a. m. until the discovery of the burglary, the change in the time of White's departure lessened the probability that the jury would believe that Hartley rather than appellant committed the burglary. Appellant contends that he was thereby prejudiced by the late endorsement of White's name on the information.

■ To establish prejudice as the result of the late endorsement of a witness's name upon the information, the defendant must show that the late endorsement deprived him of his right to prepare to meet the witness's testimony. *State v. Griffith, supra.* Merely demonstrating that the witness's testimony was damaging to the defendant is insufficient.[1] The record shows that appellant learned at the preliminary hearing, held six months prior to trial, that the burglary occurred after the janitor left the cafe. Appellant was informed of the substance of White's testimony prior to the endorsement. If he was prejudiced by the late endorsement, he should have requested a continuance. *State v. Griffith, supra.* Since appellant has made no showing of

---

1. Of course, a defendant must show that the witness's testimony is damaging. If it is not, then he could not be prejudiced by being denied the opportunity to prepare for it. *E. g., State v. Goodrick*, 95 Idaho 773, 519 P.2d 958 (1974) (No prejudice from late endorsement where witness's testimony only concerned chain of custody of certain evidence.); *State v. Griffith*, 94 Idaho 76, 481 P.2d 34 (1971) (No prejudice from late endorsement where witness's testimony damaging to defendant was merely cumulative.).

prejudice from the late endorsement, we hold that the trial court committed no error in granting it.

Finally, at the beginning of the trial the trial court read to the jury nine "preliminary" instructions, which included the instructions on the burden of proof and on the presumption of innocence.[2] The court told the jury that these instructions would not be read again when the remaining instructions were read at the close of the trial, but that they and the other instructions would be given to the jury in writing. Appellant contends that the failure to reread to the jury the nine preliminary instructions was reversible error.

 The trial court, in the sound exercise of its discretion, can elect to give preliminary instructions to the jury. I.C. § 19–2102. We encourage such attempts to orient the jury at the beginning of the trial as to its function and duties. It is certainly more instructive for the jury to learn before the presentation of evidence rather than after that the defendant is presumed innocent, that the state must establish guilt beyond a reasonable doubt, that the jury is the sole judge of the facts, and so forth.

When the trial court gives the jury preliminary instructions, it may be necessary, at the close of the evidence, to repeat or to otherwise call to the jury's attention some parts of the preliminary instructions to ensure that they have not been forgotten. This is a matter within the discretion of the trial court, however. In the present case, after reading the final jury instructions the trial court gave the jury written copies of both the preliminary and the final instructions. Whether, in addition, the court should have reread the preliminary

instructions we need not decide since the appellant waived any error in this regard by failing to object. *State v. Spencer*, 74 Idaho 173, 258 P.2d 1147 (1953).

Judgment affirmed.

SHEPARD, J., and SCOGGIN, D. J., Retired, concur.

McFADDEN, C. J., and BAKES, J., concur in result.

---

2. In the preliminary instructions, the trial court informed the jury that the information was merely a formal charge and was not evidence of guilt; that the state had the burden of proving beyond a reasonable doubt every material allegation contained in the information; that a criminal defendant is presumed to be innocent until proven guilty beyond a reasonable doubt, which was defined; that all facts and circumstances need not be established beyond a reasonable doubt, but taken together they must establish the defendant's guilt beyond a reasonable doubt; that the jurors are the sole judges of the facts, but are bound to accept the law as stated by the trial court; that the jurors must consider only competent evidence and neither draw inferences from unanswered questions nor consider stricken testimony; that the jurors must determine for themselves what weight, if any, to assign to a witness's testimony; that the opening statements of the attorneys are not evidence; and that they must not infer from any ruling by the court that it holds views for or against either party.