732 P.2d 382
**STATE of Idaho, Plaintiff-Respondent,**

v.

**Terrence J. MATTHEWS,
Defendant-Appellant.**

No. 16490.

Court of Appeals of Idaho.

Feb. 3, 1987.

**414**

Terrence J. Matthews, pro se.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., David R. Minert, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

On two separate dates, Terrence J. Matthews received traffic infraction citations for exceeding a posted speed limit (I.C. § 49-681(2)) and for failure to yield to oncoming traffic when stopped at a flashing red light (I.C. §§ 49-611, -614). Matthews

denied the violations. Both cases were tried to the court on July 18, 1985. Following presentation of evidence, a magistrate found that Matthews had committed the infractions and assessed penalties for each charge. On a consolidated appeal to the district court, the magistrate's orders were affirmed. Matthews further appeals to this Court. We affirm the magistrate's finding in respect to the excessive speed charge. We vacate the magistrate's order in respect to the failure-to-yield offense and remand that case for a new trial.

The citations Matthews received fall within the purview of the Idaho Traffic Infractions Act. I.C. § 49-3402. While the legislature has designated infractions as "civil" public offenses, the Infractions Act provides that infraction citations shall be processed the same as misdemeanor offenses, applying the same burden of proof and rules of evidence as in a criminal trial.[1] I.C. § 49-3403. Likewise, appeals in such actions shall be in the same manner as prescribed by law and rule for criminal cases. I.C. § 49-3407. Therefore, we shall apply to Matthews' case the same standards of review as are applicable to criminal appeals.

### I

*Exceeding the Speed Limit*

Matthews was cited for driving in excess of the posted twenty-mile per hour limit on a street in Emmett, Idaho. The officer who issued the citation testified that, while stationed on traffic patrol, he observed a Volkswagon automobile travelling at an excessive rate of speed in an area where the posted speed limit changed from twenty-five miles per hour to twenty miles per hour. The officer estimated the Volkswagon's speed at between thirty-five and forty miles per hour. He secured a reading on his radar unit of forty-two miles per hour as the vehicle in question entered the twenty-mile per hour zone. The officer moved into the traffic flow, caught up with

---

1. There is no right to a jury trial, however, under the Infractions Act. I.C. § 49-3403; *State v. Bennion*, 112 Idaho 32, 730 P.2d 952 (1986);

*State v. Brown*, 112 Idaho 143, 730 P.2d 1063 (1986).

the Volkswagon and pulled it over. Matthews was the driver.

In his defense, Matthews testified at trial that he was driving only eighteen miles per hour in the area where the officer allegedly observed the violation. He related the substance of conversations with the officer when the citation was issued, concerning the accuracy of the radar unit. On cross-examination by Matthews,[2] the officer stated "I don't recollect the discussion on the locking of the radar, but it could be that I told you a little fib on locking the radar in, because I was taught to not lock the radar in, at the radar school." The officer also admitted that his observation of Matthews' driving was partially blocked by a bush as Matthews proceeded past the point where the officer was stationed.

At the conclusion of the evidence, the magistrate found that Matthews had committed the offense as charged. The magistrate indicated that his determination was not based upon the results of the radar reading but rather was based on the officer's visual observation of Matthews' speed.

On appeal, Matthews challenges the magistrate's decision in three respects. First, he attacks the credibility of the police officer on the ground that the officer admitted untruthfulness because he could have "told [Matthews] a little fib" about the radar unit. Second, Matthews questions the reliability of the radar reading because of "variables, like the size [of] the car, other traffic, being behind bushes, or being in the middle of a residential area." Finally, arguing that because the judge found the violation had been committed, "without reference to fact," Matthews contends the judge was biased.

■ Regarding the credibility of the police officer, it is well settled that we will not substitute our judgment for that of the finder-of-fact as to the credibility of witnesses, the weight of the testimony, and reasonable inferences to be drawn from the

evidence. *State v. Campbell,* 104 Idaho 705, 662 P.2d 1149 (Ct.App.1983). Here, the magistrate was presented with conflicting evidence. He was in a position—not afforded to us—to observe the demeanor of the witnesses, to hear the inflections and tones in their voices during their oral testimony, and to view any other mannerisms or characteristics that directly or intuitively would assist him in reaching a conclusion as to which witnesses he would believe over others and the weight to be given to each person's testimony. The judge determined that the evidence presented by the state was the more accurate. We will not disturb that determination.

■ In regard to the radar evidence, the magistrate placed little or no reliance on that proof. We find it unnecessary therefore to decide whether the accuracy of the radar reading was affected by any external influences. Finally, we find nothing in the record to indicate any "bias" on the part of the magistrate. Rather, the magistrate's decision is supported by substantial evidence, when the evidence is viewed in the light most favorable to the state—as we must do on appeal. *State v. Greensweig,* 103 Idaho 50, 644 P.2d 372 (Ct.App.1982). The order finding that Matthews committed the offense of driving in excess of a posted speed limit will be sustained.

## II

### *Failure to Yield*

After the speeding charge was resolved, the court proceeded with trial on the failure-to-yield offense. Evidence was presented that Matthews had proceeded easterly into an intersection, also in Emmett, Idaho, after having stopped at a flashing red signal light. At approximately the same time as Matthews pulled into the intersection, a police vehicle approached the intersection from the south. The officer who was driving that vehicle testified that he slammed on his brakes to avoid a

---

**2.** Matthews appeared without counsel and represented himself at trial on both charges ad-    dressed in this opinion.

collision with Matthews' vehicle. The officer then pursued Matthews, stopped him and gave him a citation for failure to yield.

At trial, after the officer had testified on direct examination, Matthews raised a question as to whether the citation was for failing to stop at a traffic signal or for failing to yield to traffic after having stopped at the signal. To assist in clarifying that issue, the prosecutor moved to amend the citation. Matthews objected to any amendment. After hearing arguments, the court held that the charge was for failing to yield, not for failing to stop. The judge then stated, "The Court verifies that charge." At that point, Matthews asserted that he had further argument and wished to cross-examine the officer. The court allowed Matthews to proceed.

At the completion of the cross-examination, and before Matthews offered any testimony on his own behalf, Matthews requested a continuance to produce witnesses "to the effect that [the officer] was going quite fast at the intersection."[3] The court inquired of Matthews why the witnesses were not present for the trial. Matthews responded that he had "tried to get them here today. I requested them. I didn't subpoena them, though." The judge then stated:

> Look, we have taken up a full hour and forty-five minutes here this afternoon on two relatively minor traffic infractions. I am satisfied that whether—there is some real contention about whether or not a waiver of right-of-way takes place, even if you can establish by a preponderance of evidence that the other party is in prior violation, there is some recent Supreme Court—but I will tell you what you can do. You can appeal this Court's decision within 42 days. I am going to sustain the infraction....

On that abrupt note, the trial ended.

 Matthews raises three issues on appeal concerning this citation. First, he

questions the credibility of the police officer and argues that the officer could have conducted a more thorough investigation at the scene of the incident by measuring his own skid marks. Second, Matthews questions the propriety of allowing an amendment of the citation by the state during the trial (although the record is unclear whether any amendment in fact was allowed in this case). Third, he challenges the termination of the trial by the magistrate in the midst of the proceeding. We believe this latter point is dispositive of the appeal. Matthews' right to present a defense was prematurely curtailed by the magistrate. By terminating the proceedings as it did, the court did not even permit Matthews to testify on his own behalf—clearly an infringement upon a constitutional right which attaches to a criminal proceeding. We believe the same right should adhere to infraction trials, in light of the legislature's directive that "infraction citations shall be processed the same as misdemeanor offenses...." I.C. § 49–3403. We hold that the magistrate's order finding that Matthews had committed the offense of failure to yield must therefore be vacated.

In summary, the order finding that Matthews committed the offense of driving in excess of a posted speed limit is affirmed. The order finding that Matthews committed the offense of failure to yield is vacated and remanded for a new trial.

BURNETT and SWANSTROM, JJ., concur.

---

**3.** In some circumstances, the speed of an oncoming vehicle might be relevant to whether it should have been perceived as an "immediate hazard." *See* I.C. § 49–643(2), incorporated by reference into I.C. § 49–614(1)(a). We intimate no view as to whether such circumstances actually exist in this case.