887 P.2d 1102

STATE of Idaho, Plaintiff–Appellant,

v.

Howard G. DICE, Defendant–Respondent.

No. 20684.

Court of Appeals of Idaho.

Dec. 27, 1994.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen., argued, Boise, for appellant.

Charles E. Kovis, Lewiston, for respondent.

PERRY, Judge.

In this case we are asked to decide whether the district court properly suppressed evidence because of alleged violations of the defendant's constitutional protections. We conclude that the district court erred in suppressing the evidence.

## FACTS AND PROCEDURE

In November of 1992, Idaho Bureau of Narcotics agents, along with local police, began surveillance of a residence in Lewiston, Idaho. The agents suspected that illegal substances were being sold at the residence. On November 16, the officers made a controlled purchase of marijuana from someone at the residence with the help of a confidential informant. At that time, the police observed four vehicles at the residence. Through registration records and the informant, the officers were able to determine the ownership of each vehicle. The officers arranged, again through the help of the informant, a larger marijuana purchase to be made the following day. The purchase was to be made directly from the supplier for the earlier buy, someone unknown to the informant.

Unfortunately for the agents conducting the surveillance, the confidential informant turned out to be somewhat unreliable. The second scheduled buy was interrupted, cancelled and rescheduled by the informant a number of times during the day. Finally, in the evening, the informant called the police station and informed the officers that the supplier was still at the residence and that he was willing to attempt the transaction. After being put on hold, however, the informant hung up the phone and did not call back.

Police monitoring the residence that evening observed that, in addition to the four vehicles present the previous day, a motorcycle was also parked at the residence. The ownership of the motorcycle was uncertain. Shortly after the informant's call to police stating that the supplier was still at the residence, the agents saw Howard Dice leave the residence on the motorcycle. Because his vehicle was the only one unknown to the police, and because the informant had stated he did not know the supplier, the agents concluded that Dice was the supplier for the scheduled buy. The officer in charge of the investigation directed agent Grotjohn, who was present at the scene, to stop Dice and inquire about drug activity at the residence. After Grotjohn had followed Dice for a short distance, Dice circled a block twice and repeatedly looked over his shoulder to the rear, leading the agent to conclude that Dice was concerned about being followed. Grotjohn then activated his overhead lights and Dice pulled over. Three other police vehicles arrived shortly thereafter. Grotjohn asked Dice for a driver's license, which Dice provided, then asked him if he had any illegal drugs or weapons on his person. Dice responded that he did have marijuana and handed his coat to Grotjohn stating something like, "Here, take it." Inside the coat were several baggies of marijuana.

Dice was charged with possession of marijuana with intent to deliver, I.C. § 37–2732(a)(1)(B), and failure to affix a controlled substance tax stamp, I.C. §§ 63–4205 and 63–4207. Prior to his trial, Dice sought to have certain statements and the marijuana suppressed on the grounds that Dice "was seized by the officers of the Idaho Bureau of Narcotics without probable cause and subjected to interrogation and a non-consensual search of his person without a warrant." Following a hearing, the district court granted Dice's motion to suppress. After determining that reasonable suspicion existed for the stop, the district court then found that Miranda warnings should have been given to Dice prior to questioning. The district court further found the failure of the police to provide the warnings necessitated suppression of Dice's statements and the tangible evidence seized as a result of those statements.

The state now appeals, claiming that the district court erred: (1) in hearing the motion to suppress because it was untimely; (2) by deciding the motion on grounds not raised by either party; (3) by concluding that Dice was in custody for purposes of Miranda warnings; and (4) in concluding that Dice's statements and the tangible evidence should be excluded from introduction at trial because of the Miranda violations.

## ANALYSIS

### A. UNTIMELINESS OF THE SUPPRESSION MOTION

■ As a preliminary matter, we first address the state's argument that the motion to suppress should not have been heard because it was untimely and no sufficient reason for the untimeliness was given as required by I.C.R. 12(d). Idaho Criminal Rule 12(d) provides:

Motion date. Motions pursuant to Rule 12(b) must be filed within twenty-eight (28) days after the entry of a plea of not guilty or seven (7) days before trial whichever is earlier. Such motions must be brought on for hearing within fourteen (14) days after filing or forty-eight (48) hours before trial, whichever is earlier. The court in its discretion may shorten or enlarge the time provided herein, and for good cause shown, or for excusable neglect, may relieve a party of failure to comply with this rule.

In this case, the district court ordered that all pre-trial motions be filed by January 4, 1993. The suppression motion, however, was not filed until February 8, 1993. Prior to the hearing on the suppression motion, the state filed an objection to the motion as untimely. The district court held a hearing on the objection and listening only to the state's argument, ruled:

Well, first of all, with regard—with regard to the lateness of the motion, that is, the motion being filed after the—the cutoff date I—I'm going to deny the objection to the motion because of timeliness. And the reason for that is is—is in the interest of justice and I don't mean that as a phrase. If truly the evidence should be suppressed then I'm going to consider it—consider it, but, Mr. Brudie [Dice's counsel below], I—this is the last time I'll ever do that, you understand. Don't file your motions late any more.

Dice's counsel was not required or given the opportunity to offer any good cause for the delay or to show that the lateness was due to excusable neglect. It appears that the district court decided to hear the motion because it felt the motion was meritorious. This, we conclude, was error. Idaho Criminal Rule 12(d) clearly requires either good cause or excusable neglect to be shown by a party who has missed the prescribed deadlines. Allowing untimely motions to be heard because they appear meritorious eviscerates the purpose of the rule. The district court should have entertained an explanation by Dice's counsel for the delay and then should have determined whether good cause or excusable neglect was shown based on the reasons given. If no good cause or excusable neglect was established to the satisfaction of the district court, the motion should not have been heard. Although we conclude that the district court erred by failing to require Dice to offer reasons for the delay, we do not remand for a further hearing because of our decision on the merits of the motion to suppress.

## B. DISTRICT COURT'S DECISION ON THE SUPPRESSION MOTION

█ We first note that our review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact where supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Shepherd*, 118 Idaho 121, 122, 795 P.2d 15, 16 (Ct.App.1990). The facts in this case are not disputed, only their legal significance. Therefore, we exercise free review over the questions presented in connection with the motion to suppress. *State v. Ramirez*, 121 Idaho 319, 321, 824 P.2d 894, 896 (Ct.App.1991).

█ The state initially argues that the district court erred in deciding the motion on grounds not raised by either party. This argument, however, oversimplifies the district court's ruling. Dice argued for suppression of the evidence by challenging the legality of the initial stop, claiming that the facts did not give rise to a reasonable suspicion. The state's opposition to the suppression motion, aside from the timeliness objection, focused exclusively on whether a reasonable suspicion existed to justify the stop. At the hearing, the district court ruled from the bench. In reaching its decision, the district court applied a search and seizure analysis coupled with a brief discussion of Miranda warnings:

> [R]easonable suspicion is a—is a very low standard and the—even the—even the double hearsay indications that the officers had from a—an informant, the fact that the buy had been made the day before, the fact that the informant said that the buy— by hearsay that the source was still present, the motorcycle being the only vehicle that was not there the day before, the motorcycle leaving, the—all in my opinion establishes the very low standard of reasonable suspicion to allow a investigatory stop as was made in this case.
>
> The second—the second issue is what can the officer do then after the stop is made?
>
> One thing that was not touched upon in this situation, at the time that the questions were asked we did have I think four other officers present. There is no indication that guns were drawn. Am I correct, were there three or four other officers present? The preliminary hearing transcript indicates I believe that there were at least three other officers present in that area. One was a uniformed officer, a patrol car was there by this time. There is no doubt that there had been a seizure and the—and at the time of the questioning.
>
> Now, the—we've also watered down what—when the Miranda warnings must be given. The latest Supreme Court case that I can find—I don't know if this is the latest but I believe it's still law—still the law of—as far as the United States Supreme Court is concerned is that the Miranda warning must be given where there is a formal arrest or restraint of freedom of movement of the degree associated with formal arrest.
>
> I am going to find in this case and conclude where a stop is made of this type or there is a seizure made where the questions are not merely investigatory questions but are in fact questions that require a person to either refuse to respond or to respond in a way that they are either in fact committing a crime, in that case before those questions can be asked and before the answers and the subsequent fruit of those answers can be used in court, that the Miranda warning must be given. And upon that basis I am going to suppress the evidence.

The district court's ruling correctly began by determining whether there was a reasonable suspicion for the stop. After answering this initial question affirmatively, the district court then analyzed whether the questioning by the officer at the scene following the stop was proper. Because this second inquiry was the appropriate analytical step to determine whether the challenged evidence would be suppressed, we reject the state's argument that the district court based its decision on a position not argued by the parties.

█ The first step of analysis in the case, and that properly applied by the district court, was to determine whether the

stop of Dice was constitutionally appropriate. There are three types of police-citizen encounters: (1) entirely voluntary encounters; (2) investigative detentions, also known as "Terry stops"; and (3) actual arrests. *State v. Knapp,* 120 Idaho 343, 346, 815 P.2d 1083, 1086 (Ct.App.1991); *State v. Zapp,* 108 Idaho 723, 726–27, 701 P.2d 671, 674–75 (Ct.App. 1985). Completely voluntary stops do not implicate constitutional protections while full arrests must be supported by probable cause. In this case we are dealing with an investigative detention. The Idaho Supreme Court has held:

> An individual who is accosted by a police officer and has his freedom to walk away restrained has been seized. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not all seizures of the person need be justified by probable cause to arrest for a crime; a police officer may, in appropriate circumstances and in an appropriate manner, detain a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. *Terry,* 392 U.S. at 22, 88 S.Ct. at 1880. Such a seizure is justified under the Fourth Amendment if there is an articulable suspicion that the person has committed or is about to commit a crime. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

*State v. Rawlings,* 121 Idaho 930, 932, 829 P.2d 520, 522 (1992).

In determining whether a reasonable suspicion existed at the time of the stop, "the proper inquiry is to look at the totality of the circumstances and ask whether the facts available to the officers at the time of the stop gave rise to a reasonable suspicion, not probable cause to believe, that criminal activity may be afoot." *State v. Gallegos,* 120 Idaho 894, 897, 821 P.2d 949, 952 (1991).

█ We agree with the district court's finding that a reasonable suspicion existed for the stop of Dice. Through the informant and their own records, the police were able, by a process of elimination, to determine that

the driver of the motorcycle was likely the supplier for the controlled buy. The evidence presented to the police at the time may not have given the police probable cause to arrest Dice, but clearly warranted a stop of Dice and further investigation to determine whether he was involved in criminal activity. Thus, there was a reasonable suspicion to stop Dice for the purpose of conducting further investigation.

Once it has been determined that there was reasonable suspicion, the next step in the analysis requires an examination of the questioning itself. Since *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court has further defined the boundaries of an investigatory stop, determining that once the stop has occurred:

> the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.

*Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984). *See also Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), and *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).

█ Although the *Berkemer* decision dealt with the reasonable suspicion involved in traffic violation stops, *Royer* and *Brignoni–Ponce* applied the *Berkemer* limitation to other situations. It appears, therefore, that limited questioning by an officer in an investigatory stop is permissible, but must be confined to general identification matters and confirming or dispelling the suspicion that resulted in the stop. If these questions provide the officer with probable cause, then an arrest may be made. If no probable cause arises, the detainee should then be permitted to leave.

█ In this case, Grotjohn first asked Dice for a driver's license, which was provided. Grotjohn then asked if Dice had any illegal weapons or drugs on his person, to which Dice responded affirmatively. Dice then handed his jacket to Grotjohn.[1] Clear-

---

1. Dice has argued on appeal that somehow the

acceptance of the jacket amounted to a search.

ly, it would have been proper for Grotjohn to ask Dice questions regarding his presence at the residence, whether he was involved in the sale of marijuana or other questions related to the officer's suspicions. Thus, the limited questioning in this instance was within the permissible boundaries of an investigatory stop.

The error of the district court was in its analysis of the relationship between investigatory stops and the United States Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The district court found that questions requiring self-incriminating answers were beyond the scope of permissible inquiry and therefore required Miranda warnings. This distinction, however, has never been made by the United States Supreme Court nor by the appellate courts of this state. Indeed, virtually any investigatory questioning, beyond mere identification matters, could be considered self-incriminating. The United States Supreme Court, again in *Berkemer*, analogized traffic stops to "Terry stops" and found that:

> The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda.

*Berkemer*, 468 U.S. at 440, 104 S.Ct. at 3150.

The reason for not requiring Miranda warnings prior to investigatory stop questioning lies in the determination that a detainee is not in custody or subject to restraint equivalent to formal custody during the stop and therefore Miranda does not apply. It is, of course, always possible that the initial investigatory stop may be transformed into custody by virtue of the questioning or conduct of the police. In such a situation, the failure to properly advise a detainee of his Miranda protections would make any further statements inadmissible. Thus, there is a third step in our analysis.

We must also ask whether the detention, which may have been initially proper, became custodial at any point during the encounter. If so, then giving Miranda warnings is a prerequisite to the admissibility of any statements made by the detainee after the point in time at which the encounter became custodial.

■ Dice argues on appeal that the district court properly suppressed the marijuana and Dice's statement because he was subject to a custodial interrogation without being advised of his Miranda protections. To address Dice's argument, we must decide whether the stop, which we have concluded was valid initially, exceeded the constitutional limitations of such a stop and became custodial.[2] We conclude that it did not. This Court has set out the relevant inquiry for making custody determinations in *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct.App.1992):

> The United States Supreme Court equated custody with a person being "deprived of his freedom by the authorities in any significant way." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1629. This test has been redefined to mean when a person's freedom of action is "curtailed to a 'degree associated with formal arrest.'" *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct.App. 1990) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984)). The Court, in *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977), ... instructed that the "test is an objective one based on the surrounding circumstances." To determine if a suspect is in custody, this Court, subsequent to *Mathiason*, adopted the Supreme Court's test that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Myers*, 118 Idaho at 611, 798 P.2d at 456 (quoting

We disagree. According to the testimony before the district court, Dice handed Grotjohn his jacket voluntarily, with no request to do so. Grotjohn never asked to search Dice, nor did he indicate that Dice would be searched. Such voluntary conduct on the part of Dice can be considered as consent to a search.

2. The district court did not explicitly make such a finding, though such a finding can be inferred from the district court's ruling that Miranda warnings were required.

*Berkemer,* 468 U.S. at 442, 104 S.Ct. at 3151).... We must review the "totality of all the circumstances" that are presented in the record. *See Ybarra,* 102 Idaho at 578, 634 P.2d at 440 (citing *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980)); *see also* WILLIAM E. RINGEL, SEARCHES & SEIZURES ARRESTS AND CONFESSIONS §§ 27.3(a)–(c) (circumstances to be considered when determining whether a defendant is in custody are: location of interrogation, conduct of the officers, nature and manner of the questioning, time of interrogation, and other persons present).

We cannot agree with Dice that he was in custody at the time of the questioning by agent Grotjohn. In *State v. Ybarra,* 102 Idaho 573, 634 P.2d 435 (1981), our Supreme Court considered whether a detainee was in custody when he had been initially stopped by a police patrol vehicle, which was later joined by three officers in unmarked vehicles. The officers approached the detainee with weapons drawn. After determining that the detainee did not threaten officer safety, the officers in the unmarked vehicles left the scene. The detention in *Ybarra* was held not to be custodial for the purposes of Miranda warnings.

Dice argues that *Ybarra* is inapposite because the additional officers did not recede from the scene once Dice was stopped. This argument, however, fails to recognize that in this case we are only concerned with the nature of the stop from the moment Dice pulled over until he handed his jacket to Grotjohn. We cannot say that the facts of this case, up until the time of Dice's statement and surrender of his jacket, vary substantially from *Ybarra.* The fact that the officers did not recede in the brief moment before Dice surrendered his jacket does not distinguish this case from *Ybarra.* Further, in Dice's case the officers, other than Grotjohn, did not approach Dice, but, rather,

remained near their vehicles. We conclude that for Miranda purposes, the stop had not developed into custodial detention when Dice admitted he was carrying drugs and voluntarily surrendered his jacket to Grotjohn. Therefore, the district court erred in concluding that Miranda warnings were required and suppressing the evidence.

Because we conclude that the suppression motion should not have been granted, we need not consider the state's final issue regarding suppression of tangible evidence based on a failure to give Miranda warnings.

## CONCLUSION

The district court erred by not requiring Dice to offer good cause or excusable neglect for failing to timely file the suppression motion. This error, however, does not necessitate a remand to the district court because we conclude that the suppression motion, though heard, should have been denied. The district court properly found that reasonable suspicion existed for the stop of Dice. Once Dice was stopped, the questions asked by agent Grotjohn were within constitutional limits. The stop did not develop into custodial detention by the time Dice was questioned about weapons or drugs and voluntarily surrendered his jacket. Thus, Miranda warnings were not required to be given and the district court's suppression of Dice's statements and of the tangible evidence was erroneous. We reverse the order of the district court suppressing the evidence and remand the case for trial.

WALTERS, C.J., and LANSING, J., concur.