# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50191

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: October 10, 2025 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| TONY CURTIS SALLINGS, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Joel E. Tingey and Michael J. Whyte, District Judges.

Judgment of conviction for trafficking in methamphetamine or amphetamine and possession of a controlled substance, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge Pro Tem

Tony Curtis Sallings appeals from his judgment of conviction for trafficking in methamphetamine or amphetamine and possession of a controlled substance. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Late at night on August 31, 2020, an officer observed a vehicle parked at a curb. He saw two males exit the vehicle and walk into a house. The officer ran the vehicle's license plate through a law enforcement database and learned that the registered owner had a suspended driver's license and an outstanding nonextraditable warrant from another state. The officer saw the vehicle again a short time later and conducted a traffic stop. He contacted the driver, who was the registered owner. Sallings, who was the passenger, at first identified himself as "Stallings." Another officer arrived and spoke with Sallings; Sallings said he thought he had an outstanding warrant. This

1

turned out not to be true but, during the encounter, that officer believed there was a warrant for Sallings' arrest. The officer observed part of a plastic bag in Sallings' jacket pocket but did not see what was in the bag. The officer told Sallings to exit the vehicle but, in doing so, he removed his jacket despite the officer telling Sallings to leave it on. The officer placed handcuffs on Sallings and informed him of his *Miranda*[1] rights. The officer then told Sallings that the officer saw a bag of "weed" in Sallings' pocket and the officer asked if he could search the jacket. Sallings responded, "I can get it out for you, it's no problem." The officer then said, "I'm going to get it then" and asked Sallings if the officer could search the jacket and Sallings nodded his head. A search of the jacket and subsequent search of the vehicle revealed controlled substances and paraphernalia.

The procedural history of this case includes significant delays, some of which are attributable to the COVID-19 pandemic. Sallings was arrested; a criminal complaint was filed on September 1, 2020; and his trial date was ultimately set for June 1, 2022. Sallings' first motion to suppress was filed on May 26, 2021.[2] Sallings' motion alleged that the officers did not have a reasonable articulable suspicion to stop the vehicle in which Sallings was a passenger. That motion was denied on June 11, 2021. The second motion, which was a motion to suppress evidence as well as a motion to dismiss on speedy trial grounds, was filed by Sallings' newly appointed counsel on April 28, 2022. Between Sallings' arrest and his last scheduled trial date, approximately twenty-one months passed. The second motion to suppress alleged that the search of Sallings' jacket did not fall within either the plain-view or consent exceptions to the warrant requirement. On May 24, 2022, after these motions were denied, Sallings entered a conditional plea of guilty to trafficking in methamphetamine (I.C. § 37-2732(b)) and possession of a controlled substance (I.C. § 37-2732(c)), reserving his right to appeal. Sallings appeals.

## II.

## ANALYSIS

On appeal, Sallings argues the district court erred in finding that the officer had reasonable suspicion to conduct a traffic stop of the vehicle and denying his first motion to suppress. Sallings

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[2]     This motion was untimely, but the State did not object on that ground.

2

also contends the district court erred in finding the search of his jacket was justified under both the plain-view exception and the consent exception to the warrant requirement and thus erred in denying his second motion to suppress. Finally, Sallings argues that the district court erred in finding that his constitutional right to a speedy trial was not violated. The State responds that the district court correctly concluded that the officer had reasonable suspicion to stop the vehicle and therefore correctly denied the first motion to suppress. The State further responds that Sallings' second motion to suppress was untimely and should not have been considered. However, in the alternative, the State argues that the seizure of the baggie and search of the jacket were justified by the plain-view and consent exceptions. Finally, the State contends Sallings' has failed to demonstrate that the district court erred in concluding that his constitutional right to a speedy trial was not violated. We agree that the district court correctly denied both motions to suppress and correctly concluded that Sallings' right to a speedy trial was not violated.

## A.     Motions to Suppress

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

### 1.     Reasonable suspicion for stop

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709

3

(Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Relying on a case from this Court which has been overruled, Sallings argues that the stop of the vehicle in which he was a passenger was not supported by reasonable suspicion. *See State v. Cerino* 141 Idaho 736, 117 P.3d 876 (Ct. App. 2005), *overruled by State v. Simanton*, 171 Idaho 722, 525 P.3d 760 (Ct. App. 2022). In *Cerino*, officers received an anonymous tip that a white Nissan pickup with 1B license plates was transporting illegal drugs between eastern Idaho and Rupert and would stop at a given residence. An officer saw a vehicle matching that description parked at a residence. The officer radioed an inquiry regarding the registration of the vehicle and was informed that the vehicle was registered to Silas Cerino and Robin Cerino. The officer did not know either of the registered owners. Later, the officer saw a male leave the residence and drive away in the white pickup. The officer requested a driver's license check on the male registered owner and was informed that Silas Cerino did not have an Idaho driver's license. Suspecting that the male driver was Silas Cerino, the officer requested another officer to stop the driver for driving without a license. After the stop it was confirmed that Cerino was the driver and had no driver's license. A subsequent inventory search of the vehicle disclosed methamphetamine. Cerino pled guilty, reserving his right to appeal the denial of his motion to suppress challenging whether there was reasonable suspicion for the stop. This Court held that the information known to the officer at the time he ordered the stop was insufficient to create a reasonable suspicion that the vehicle or its driver were involved in unlawful activity. This Court noted that the officer only knew that Cerino did not have an Idaho driver's license and had no information as to whether he had a license from another jurisdiction. This Court also noted "more importantly" that the officer had not previously seen Cerino and had no description of him and was relying on the driver's gender. *Cerino*, 141 Idaho at 738, 117 P.3d at 878. This Court held that, in those circumstances, "there was little basis to infer that the male registrant was driving; it was as plausible and perhaps more likely, that the driver was someone else." *Id*. We concluded that the "mere observation of a

vehicle being driven by someone of the same gender as the unlicensed owner is insufficient to give rise to a reasonable suspicion of unlawful activity." *Id.*

After *Cerino* was decided, the United States Supreme Court decided *Kansas v. Glover*, 389 U.S. 376 (2020). In that case, an officer ran a license plate check on a vehicle and learned that Glover, the registered owner, had a revoked license. The officer assumed Glover was the driver and initiated a traffic stop. The Court held that the fact that the registered owner of a vehicle is not always the driver did not negate the reasonableness of the stop. The Court did, however, emphasize the narrow scope of its holding, noting that each case is to be decided on its own facts and circumstances. The Court noted that the officer "possessed no exculpatory information--let alone sufficient information to rebut the reasonable inference that Glover was driving his own truck--and thus the stop was justified." *Id.* at 386.

Following *Glover*, this Court decided *State v. Simanton*, 171 Idaho 722, 525 P.3d 760 (Ct. App. 2022). In *Simanton*, an officer stopped a vehicle after learning that the registered owner had an active warrant. This Court, noting that the United States Supreme Court is the final arbiter of the Fourth Amendment, overruled *Cerino* to the extent it did not align with *Glover*. *Simanton*, 171 Idaho at 726, 525 P.3d at 764. We ruled, therefore, that it was reasonable for the officer to infer that Simonton was driving his own vehicle and that, notwithstanding the absence of a suspicion of illegal activity, an officer may stop a vehicle to effectuate an arrest pursuant to a valid warrant when the officer reasonably believes that the subject of the warrant is in the vehicle. *Id.*

Sallings argues that the district court misapplied the narrow ruling in *Glover* and incorrectly found that *Cerino* was abrogated. He further argues that the Supreme Court's finding of reasonable suspicion in *Glover* does not extend to a stop where there are two people in the vehicle. This argument is unavailing. Plainly, *Simanton* overrules *Cerino* to the extent *Cerino* is inconsistent with *Glover*. As was the case in *Glover* and *Simanton*, it was reasonable for the officer in this case to infer that the registered owner was driving his own vehicle absent any information to the contrary. The presence of a passenger in the vehicle does not change the equation, and Sallings has not cited a case in which the holding in *Glover* was challenged based upon the presence of multiple persons in the vehicle.

Sallings also argues that *Glover* and *Simanton* were decided under the Fourth Amendment to the United States Constitution and that the Idaho Constitution should provide heightened

5

protections. Indeed, Idaho courts are "free to interpret our state constitution as more protective of the rights of Idaho citizens than the United States Supreme Court's interpretation of the federal constitution." *State v. Guzman*, 122 Idaho 981, 987, 842 P.2d 660, 666 (1992). In some instances, the Idaho Supreme Court has found that Article 1, Section 17 of the Idaho Constitution provides greater protection than the Fourth Amendment of the United States Constitution. For example, as argued by Sallings, Idaho's constitutional protection of "curtilage" is broader than the federal Constitution's. *State v. Webb*, 130 Idaho 462, 467, 943 P.2d 52, 57 (1997). The Idaho Constitution also "stand[s] as a bulwark" against certain searches and seizures when the Idaho Supreme Court disagrees with the U.S. Supreme Court's conclusion about whether the intrusion at issue is "reasonable." *State v. Thompson*, 114 Idaho 746, 751, 760 P.2d 1162, 1167 (1988). Greater protections are based upon the "uniqueness of our state, our Constitution, and our longstanding jurisprudence." *State v. Donato*, 135 Idaho 469, 472, 20 P.3d 5, 8 (2001). Sallings has failed to demonstrate sufficient Idaho-specific unique circumstances that dictate a heightened standard under the Idaho Constitution for stops by law enforcement officers based upon reasonable suspicion. Therefore, Sallings has not shown error in the district court's denial of his first motion to suppress.

**2.     Jacket search**

As to the search of Sallings' jacket, we first consider whether the district court erred by considering Sallings' untimely second motion to suppress. Sallings' second motion was filed 562 days after his not guilty plea was entered. Motions to suppress evidence must be filed within twenty-eight days of a plea of not guilty or seven days before trial, whichever is earlier. I.C.R. 12(d). A trial court may shorten or enlarge the time to file a motion and, for good cause shown or for excusable neglect, may relieve a party of failure to comply with the time requirements of the rule. *State v. Caudill*, 173 Idaho 799, 804, 548 P.3d 1189, 1194 (Ct. App. 2024). If no good cause or excusable neglect is established, it is error for a trial court to entertain an untimely motion to suppress. *State v. Dice*, 126 Idaho 595, 597, 887 P.2d 1102, 1104 (Ct. App. 1994). A trial court's decision whether to consider a late motion to suppress is reviewed for an abuse of discretion. *State v. Alanis*, 109 Idaho 884, 888, 712 P.2d 585, 589 (1985). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted

6

within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

The district court allowed Sallings' untimely motion to proceed after considering the Idaho Supreme Court's emergency pandemic orders. The district court stated that it was "not going to speak" to whether suppression hearings could have been conducted in light of those orders, other than acknowledging that there were "significant limitations on [courthouse] access." The district court also considered that Sallings had filed his second motion to suppress in compliance with a briefing schedule agreed upon by counsel for the State at a pretrial conference held on April 25, 2022. At that pretrial conference, newly appointed counsel for Sallings indicated that he anticipated filing a motion to suppress. The State did not object but requested fourteen days to be able to review and respond to the motion. The State *did* object to timeliness in its response to, and argument on, the motion.

We agree with the State that the pandemic orders did not preclude hearings on motions to suppress, particularly remote hearings. However, even recognizing that access to the courts may have been sometimes difficult during the pandemic restrictions, it appears that the district court did not consider in its analysis the delay occurring after those restrictions ended and the date Sallings' second motion to suppress was filed. It is error for a trial court to consider an untimely motion to suppress without requiring counsel to show cause for the untimeliness. *Dice*, 126 Idaho at 597, 887 P.2d at 1104. Although not mentioned by the district court as a reason for finding good cause for the late filed motion, Sallings' trial counsel argued that the motion to suppress was untimely because he had not received bodycam videos from Sallings' prior counsel and that it was only after the videos were provided by the State that he discovered the suppression issue. The prosecutor responded that the videos were provided to Sallings' prior counsel and there is no contrary evidence in the record. There was no explanation offered for prior counsel's failure to file the motion or to include the search of the jacket in the motion to suppress he did file. *See Caudill*, 173 Idaho 799, 548 P.3d 1189 (concluding the district court did not err in denying a motion to suppress that was filed untimely with no justification provided beyond changing of counsel). We conclude, therefore, that the district court erred in allowing the untimely motion to

7

suppress. Nonetheless, we note that the district court correctly held there was no Fourth amendment violation because Sallings consented to the search of his jacket.

Although a warrantless entry or search of a vehicle is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion, either direct or implied. *Schneckloth*, 412 U.S. at 248; *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

Sallings argues that his statement that he would get the jacket for the officer and nodding his head after the officer told Sallings the officer would get it and asked for consent, were evidence only of consent, not proof of Sallings' voluntariness. Whether consent is voluntary or the product of coercion is a question of fact. The district court's determination that the conversation leading to Sallings' consent was not unduly coercive is supported by substantial competent evidence. Therefore, despite the district court's error in considering Sallings' untimely motion, we need not further address the denial of the second motion to suppress.

## B.     Speedy Trial

Whether there was an infringement of a defendant's right to speedy trial presents a mixed question of law and fact. *State v. Clark*, 135 Idaho 255, 257, 16 P.3d 931, 933 (2000). We will defer to the trial court's findings of fact if supported by substantial and competent evidence; however, we will exercise free review of the trial court's conclusions of law. *Id.*

Sallings argues that the district court erred in denying his motion to dismiss based on an alleged speedy trial violation. The State responds that there was no violation of Sallings' speedy trial rights. The procedural history of this case includes significant delays caused by the effects of pandemic restrictions on the courts, particularly as to jury trials. Sallings' arrest for trafficking in

8

methamphetamine, possession of marijuana, possession of hydrocodone and possession of drug paraphernalia occurred on September 1, 2020, during the pandemic. A preliminary hearing was set for September 15 but was continued until September 23 because a witness was experiencing COVID-19 symptoms. Sallings then posted bail and was released from custody. The district court scheduled Sallings' arraignment for October 13, but he did not appear, his bond was revoked, and a bench warrant was issued. Later that same day, Sallings was brought before the district court and was arraigned. A not guilty plea was entered and his bond was reinstated. A pretrial hearing was scheduled for January 25, 2021, with a jury trial set for February 9. However, on December 14, 2020, the Idaho Supreme Court entered an emergency order suspending all jury trials indefinitely because of the pandemic with a stated deadline of March 1, 2021, to reconsider the order. The pretrial hearing and jury trial were then reset for April 26, 2021, and May 11, respectively. On February 3, the Idaho Supreme Court entered an order providing that beginning March 1, counties could resume jury trials subject to local COVID-19 incident rates, as well as establishing prioritization of jury trials depending on the type of case and whether an individual was incarcerated or out of custody. Incarcerated criminal defendants held the highest priority based on the length of time a defendant had been incarcerated for pending charges. At a pretrial hearing on April 26, the district court informed the parties that there was only one available courtroom for the trial because of pandemic restrictions and that it might be necessary to reset the trial. Sallings informed the district court that he was not ready for trial, "not seeing eye to eye with his appointed counsel," and that he wanted a different attorney. On May 5, the district court vacated the May 11 jury trial and set a pretrial conference for July 12, followed by a jury trial scheduled for July 28.

On May 17, the State filed a motion to revoke bail because Sallings had committed new crimes. That motion was denied on June 11. Sallings then filed a motion to modify the terms of his pretrial release but then failed to appear for the scheduled July 12 pretrial hearing. That hearing was continued to July 15, at which time the district court granted Sallings' motion to remove his ankle monitor. The jury trial was reset for July 27. On July 19, the trial was continued by stipulation of the parties at Sallings' request so that he could obtain independent testing of the controlled substances. The district court reset the pretrial hearing for September 27, with the jury trial set for October 26. On September 8, the matter was again reset with the pretrial hearing to be

held November 22, and the jury trial set for January 11, 2022, to allow the charges in this case to track with new charges incurred by Sallings. Because Sallings violated the conditions of his pretrial release in the new case, a warrant was issued for his arrest. By the time of the November 22, 2021, pretrial hearing, he was in custody. Sallings remained in custody for the remainder of this case. On December 22, Sallings requested that his attorney file a motion to withdraw as counsel. That motion was granted and the January 11, 2022, trial date was vacated and reset for March 1, 2022. On January 31, Salling's newly appointed attorney requested a continuance to allow more time to prepare. That motion was granted, and the jury trial was set for June 1, 2022.

Both the Sixth Amendment to the United States Constitution and Article 1, Section 13, of the Idaho Constitution guarantee to criminal defendants the right to a speedy trial. *State v. Prano*, 170 Idaho 337, 340, 510 P.3d 690, 693 (Ct. App. 2021). When analyzing claims of speedy trial violations under the state and federal constitutions, the Idaho appellate courts utilize the four-factor balancing test set forth by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001); *State v. Lopez*, 144 Idaho 349, 352, 160 P.3d 1284, 1287 (Ct. App. 2007). That test includes consideration of the following factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice occasioned by the delay. *Barker*, 407 U.S. at 530. In *Barker*, the United States Supreme Court held that, because of the imprecision of the right to a speedy trial, the length of delay that will provoke an inquiry into whether those rights have been violated is necessarily dependent upon the peculiar circumstances of the case. *Id*. at 530-31. Until there is some delay which is presumptively prejudicial, it is unnecessary to inquire into the three other factors. *State v. Brackett*, 160 Idaho 619, 625, 377 P.3d 1082, 1088 (Ct. App. 2016). The nature of the case is also of importance in determining the period of delay that can be tolerated. *See Barker*, 407 U.S. at 531. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id*. We address the *Barker* factors in turn.

### 1. Length of delay

For purposes of the Sixth Amendment, the period of delay is measured from the date there is a formal indictment or information or the actual restraints imposed by arrest and holding to

answer to a criminal charge. *United States v. Marion*, 404 U.S. 307, 320 (1971); *Young*, 136 Idaho at 117, 29 P.3d at 953. Under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first. *Brackett*, 160 Idaho at 625, 377 P.3d at 1088. Once the balancing test is triggered, the length of the delay also becomes a factor in the balancing itself. *State v. Avila*, 143 Idaho 849, 853, 153 P.3d 1195, 1199 (Ct. App. 2006).

Sallings asserts, and the State concedes, that the length of delay was sufficient to trigger an analysis of the other *Barker* factors. We agree. Sallings was arrested and a criminal complaint was filed on September 1, 2020. His trial date was ultimately set on June 1, 2022, but he entered a conditional plea of guilty on May 24, 2022, after his motion to dismiss and second motion to suppress were denied. Accordingly, at the time Sallings' speedy trial claim was denied by the district court, approximately twenty months had elapsed since Sallings' arrest. The delay between his arrest and last scheduled trial date was approximately twenty-one months. This delay was sufficient to trigger analysis of the additional *Barker* factors. *See State v. Folk*, 151 Idaho 327, 333, 256 P.3d 735, 741 (2011) (holding that a delay of almost one year was sufficient to trigger inquiry into additional *Barker* factors where defendant was charged with lewd conduct with a child after the child had a nightmare and claimed the defendant had committed a lewd act upon the child); *State v. Campbell*, 104 Idaho 705, 708, 662 P.2d 1149, 1152 (Ct. App. 1983) (holding that a delay of one year in a robbery case was presumptively prejudicial). We, therefore, consider the remaining *Barker* factors.

### 2. Reason for delay

In evaluating the reason for the delay, different weights are assigned to different reasons. *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986); *State v. Davis*, 141 Idaho 828, 837, 118 P.3d 160, 169 (Ct. App. 2005). Speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. *Doggett v. United States*, 505 U.S. 647, 656 (1992); *Davis*, 141 Idaho at 837, 118 P.3d at 169. A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the State. *Barker*, 407 U.S. at 531. However, a more neutral reason, such as negligence or overcrowded courts, should be weighed less heavily but, nevertheless, should be considered since the ultimate responsibility for such circumstances must

11

rest with the state rather than with the defendant. *Id*. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay. *Id.*

At least seven months of the delay in Sallings' case is directly attributable to Idaho Supreme Court and Seventh Judicial District orders relating to the pandemic and priorities for jury trials thereafter. Sallings was arrested and charged on September 1, 2020, during the pandemic when the conduct of jury trials was already limited or suspended pursuant to a series of orders entered by the Idaho Supreme Court. On November 9, 2020, the Idaho Supreme Court entered an emergency order which provided that no jury trials could commence until January 4, 2021. On December 14, 2020, the Idaho Supreme Court entered another order which extended the prior order and provided that it would be reconsidered no later than March 1, 2021. On February 3, 2021, the Idaho Supreme Court entered an order which provided that jury trials could commence after March 1, 2021, and that, to the extent that a case was ready to go to trial, criminal cases in which a defendant was in custody would have first priority. The resumption of jury trials was conditioned upon incident rates of COVID-19 in each judicial district. Each of these emergency orders provided: "This order shall be deemed to have tolled the time utilized to calculate the right to a speedy trial pursuant to I.C. § 19-3501."[3] We agree with the State that, because of the pandemic orders, Sallings could not have been brought to trial until late April 2021. Even after that, the ability of the State to bring his case to trial was dependent upon priorities assigned to certain trials.

Sallings argues that the Idaho Supreme Court had no authority to suspend the right to a speedy trial. However, the Idaho Supreme Court has held that the emergency orders did not suspend the right to a speedy trial but, instead, provided a justifiable reason for a delay in bringing a criminal defendant to trial during the pandemic. *See State v. Mansfield*, 174 Idaho 690, 706, 559 P.3d 1177, 1193 (2024); *State v. Ish*, 174 Idaho 77, 93, 551 P.3d 746, 762 (2024). Therefore, we need not consider this argument any further. Any delay in bringing Sallings to trial prior to the end of April 2021 was justified.

The delays occurring after April 2021 are either justified, neutral, or attributable to Sallings. The May 2021 trial date was reset because another case had a higher priority after the

---

[3]     Idaho Code Section 19-3501 provides that the trial court, unless good cause to the contrary is shown, must dismiss a felony case if trial is not held within six months of filing the indictment or information. This statute supplements the constitutional right to a speedy trial.

12

pandemic restrictions were lifted and only one courtroom was available. This delay was necessary because of the aftermath of pandemic orders and, like other delays directly caused by those orders, was justified and should not be weighed against either side. The July 2021 trial date was reset after Sallings stipulated to vacate so that he could obtain independent testing of the controlled substances. We agree with Sallings that this delay should not be attributed to him because he had the right to have the substances independently tested, albeit almost a year after he was charged. On the other hand, there is no reason to attribute this delay to the State. This delay is, therefore, neutral. The October 21, 2021, trial date was reset so that this case could track with another newly filed criminal case in which Sallings was the defendant. It is not clear from the record why the district court believed it was necessary or beneficial to track the two cases together. It appears that they were to be tried separately. However, the record does not suggest that either the State or Sallings requested that the cases track together. We, therefore, treat this delay as neutral. On December 22, 2021, Sallings' counsel filed a motion for leave to withdraw because Sallings no longer wanted the attorney to represent Sallings. That motion was granted and the January 11, 2021, trial date was vacated and reset for March 1, 2022. Then, on January 31, 2022, Salling's newly appointed attorney requested a continuance to allow more time to prepare. That motion was granted, and the jury trial was set for June 1, 2022. The delay after Sallings' first attorney's motion to withdraw was granted is attributable to Sallings. *See State v. Reutzel*, 130 Idaho 88, 94, 936 P.3d 1330, 1336 (Ct. App. 1997) (concluding that defendant's "request for a substitute attorney made it necessary for the trial court to postpone the trial"). Because the reasons for each delay were either justified, neutral or attributable to Sallings himself, this factor does not support finding his right to a speedy trial was violated.

### 3. Assertion of speedy trial rights

In the context of a constitutional speedy trial analysis, the defendant's assertion of his or her right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Barke*r, 407 U.S. at 531-32. Failure to assert the right will make it difficult for a defendant to prove that he or she was denied a speedy trial. *Id*. at 532. The State conceded, and the district court expressly recognized, that Sallings asserted his speedy trial rights at various points in the proceedings. However, the district court did not specify nor has Sallings identified when he did so. From the record it appears that Sallings did not begin to assert

13

his speedy trial rights until after he was taken into custody in a separate criminal case in November 2021 and did not file a motion to dismiss on speedy trial grounds until April 28, 2022. A defendant's assertion of his or her speedy trial rights at a relatively late point in the proceeding does not weigh in favor of a dismissal. *State v. Moore*, 148 Idaho 887, 902-03, 231 P.3d 532, 547-48 (Ct. App. 2010). As a result, this factor does not support finding that Sallings' right to a speedy trial was violated.

### 4. Prejudice

The fourth and final factor in the *Barker* analysis is prejudice to the accused caused by the delay. The nature and extent of prejudice arising out of a delay in bringing a criminal action to trial is the most important of the *Barker* factors. *State v. McNew*, 131 Idaho 268, 273, 954 P.2d 686, 691 (Ct. App 1998). Prejudice is to be assessed in light of the interests that the right to a speedy trial is designed to protect. *Young*, 136 Idaho at 118, 29 P.3d at 954. Those interests are: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Young*, 136 Idaho at 118, 29 P.3d at 954. The third of these is the most significant because a hindrance to adequate preparation of the defense skews the fairness of the entire system. *Barker*, 407 U.S. at 532; *Lopez*, 144 Idaho at 355, 160 P.3d at 1290.

As to oppressive pretrial incarceration, we note that Sallings was in custody for seven months beginning in November 2021 when he was taken into custody in another case. Being in custody in another criminal case does not preclude the possibility of oppressive pretrial incarceration in this case. *See Smith v. Hooey*, 393 U.S. 374, 378-82 (1969) (rejecting per se rule that an individual already in custody cannot suffer prejudice from oppressive pretrial incarceration). However, Sallings has not shown that he suffered any of the kinds of prejudice identified in *Smith* particular to these circumstances such as a loss of opportunity for concurrent sentences when the latter trial is delayed, loss of parole or worsened conditions of confinement while in custody with other criminal matters pending, the mental strain of having to serve a sentence with the uncertain prospect of being taken into custody of another state, or the difficulty in defending oneself from criminal charges while being detained in another jurisdiction. Sallings has not shown oppressive pretrial incarceration *in this case*.

14

Sallings argues that anxiety and concern during his pretrial incarceration over the death of family members and his inability to help his family deal with those issues should weigh heavily in his favor. While we do not discount the anxiety and concern expressed by Sallings, we are unpersuaded that these concerns equate to legal prejudice as contemplated by *Barker*. While unpleasant for Sallings, there is no evidence that his anxiety and concern prejudiced his defense.

The third factor (the possibility that the defense will be impaired by the delay in bringing a case to trial) is the most significant. Sallings argues that the death of a potential witness (the driver of the vehicle in which Sallings was a passenger and who died while the trial was delayed) makes the prejudice obvious. We agree. As the United States Supreme Court explained in *Barker*, if a defense witness dies during the delay the prejudice is obvious. *Barker* 407 U.S. at 532. Sallings argues that the witness would have testified that the jacket worn by Sallings in which controlled substances were found actually belonged to the witness. It is unknown whether the witness would have so testified. However, even when it is unknown whether a witness would have strengthened the defense's case, the defendant is prejudiced when the witness dies during the delay. *Brackett*, 160 Idaho at 627, 377 P.3d at 1090. In this case, while Sallings was prejudiced by the witness's death, we give this factor little weight because it is unknown whether the witness would have testified that the jacket was his.

### 5. Balancing

Weighing the four *Barker* factors, together with the other relevant circumstances, we conclude, as did the district court, that there has been no violation of Sallings' constitutional right to a speedy trial. Although the length of delay in the case was sufficient to presume some prejudice and trigger the analysis of the other *Barker* factors, the prejudice factor is of limited significance, particularly when weighed with the other factors in this case. Sallings acquiesced in some of the delay and contributed to some of the delay by seeking new counsel. In addition, a significant part of the delay was justified by the pandemic and the Idaho Supreme Court's emergency orders suspending jury trials. Sallings has failed to carry his burden of showing his constitutional speedy trial rights were violated.

15

### III.

### CONCLUSION

Sallings has failed to show that the district court erred in denying his motions to suppress and his motion to dismiss based on a speedy trial violation. Accordingly, his judgment of conviction for trafficking in methamphetamine or amphetamine and possession of a controlled substance is affirmed.

Chief Judge GRATTON and Judge HUSKEY, **CONCUR**.